# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MINISTER ERROL VICTOR, SR., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2745** |
| **STATE OF LOUISIANA, ET AL.** | **SECTION "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiffs, Errol Victor, Sr., and Tonya Otkins Victor, state pretrial detainees, filed this civil action pursuant to 42 U.S.C. § 1983 against the State of Louisiana, St. John the Baptist Parish, Assistant Attorney General Julie Cullen, District Attorney Thomas F. Daley, Judge Mary H. Becnel, Judge J. Sterling Snowdy, Judge A.J. Kling, the St. John the Baptist Parish Clerk of Court's Office, the St. John the Baptist Parish Sheriff's Office, the St. John the Baptist Parish Correctional Center, Warden Phillip J. Herbert, Detective Christie Murden Chavin, Detective Kenneth Mitchell, the St. John the Baptist Parish Office of Community Service, Coroner Christy Montegut, the St. John the Baptist Parish Public Defender's Office, and unidentified defense counsel. The complaint is voluminous and rambling; however, the gist of the complaint is that plaintiffs are being subjected to a bad-faith state criminal prosecution.

### I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[1]  Regarding such lawsuits, federal law further requires:

---

[1]  "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must

_____

the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II. *Habeas Corpus* Claims

As an initial matter, the Court notes that plaintiffs challenge the legality of their continued detention and seek release from confinement. However, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Boyd v. Biggers, 31 F.3d 279, 283 n.4 (5th Cir. 1994). Therefore, plaintiffs may challenge the validity of their continued detention only by seeking federal *habeas corpus* relief pursuant to 28 U.S.C. § 2241.[2]

---

[2] "Pretrial petitions are properly brought under § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him." Stringer v. Williams, 161 F.3d 259, 262 (5th Cir. 1998) (quotation marks omitted); see also Dickerson v. Louisiana, 816 F.2d 220, 224 (5th Cir. 1987).

Moreover, even if the instant complaint is construed in part as a petition seeking *habeas corpus* relief pursuant to § 2241, such relief should be denied for the following reasons.

The United States Fifth Circuit Court of Appeals has held:

> Section 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.
>
> The exhaustion doctrine of section 2241(c)(3) was judicially crafted on federalism grounds in order to protect the state courts' opportunity to confront and resolve any constitutional issues arising within their jurisdictions as well as to limit federal interference in the state adjudicatory process.

Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987); see also Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490 (1973). The Court of Appeals has further held:

> [A] claim is not exhausted unless the habeas petitioner provides the highest state court with a "fair opportunity to pass upon the claim," which in turn requires that the applicant "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts."

Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999) (quoting Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988)).

Therefore, a Louisiana pretrial detainee generally cannot proceed to federal court pursuant to § 2241 unless he has first presented his claims to the state's highest court, the Louisiana Supreme Court, in a procedurally proper manner. This Court's legal research located no decision from the

Louisiana Supreme Court concerning plaintiffs' detention. Moreover, in a telephone call placed by this Court on November 19, 2012, the Clerk of the Louisiana Supreme Court confirmed that plaintiffs have filed no writ applications whatsoever with that court regarding their current detention or criminal prosecution. Because the Louisiana Supreme Court has never been afforded a "fair opportunity" to pass upon plaintiffs' *habeas corpus* claims, those claims are not exhausted, and therefore federal *habeas corpus* relief should not be granted.

### III. Federal Civil Rights Claims

Plaintiffs are also asserting federal civil rights claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Even if their complaint is broadly construed,[3] plaintiffs are not currently entitled to relief under § 1983 for the following reasons.

---

[3] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

## A. State of Louisiana

As noted, plaintiffs have sued the State of Louisiana. However, that is clearly an improper for two reasons.

First, states are not "persons" subject to suit under 42 U.S.C. § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66 (1989); <u>Laxey v. Louisiana Board of Trustees</u>, 22 F.3d 621, 623 n.2 (5th Cir. 1994); <u>Cronen v. Texas Department of Human Services</u>, 977 F.2d 934, 936 (5th Cir. 1992); <u>Tyson v. Reed</u>, Civ. Action No. 09-7619, 2010 WL 360362, at *3 (E.D. La. Jan. 21, 2010).

Second, in any event, plaintiffs' claims against the State of Louisiana are prohibited by the Eleventh Amendment. Unless a state has waived its immunity, the Eleventh Amendment bars the state's citizens from filing suit against the state in federal court for either monetary damages or injunctive relief. <u>Cozzo v. Tangipahoa Parish Council-President Government</u>, 279 F.3d 273, 280 (5th Cir. 2002); <u>Tyson</u>, 2010 WL 360362, at *3. The United States Fifth Circuit Court of Appeals has noted:

> By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. <u>See</u> La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

<u>Cozzo</u>, 279 F.3d at 281 (quotation marks and citations omitted).

For these reasons, the claims against the State of Louisiana must be dismissed.

## B. St. John the Baptist Parish

Plaintiffs have also sued St. John the Baptist Parish; however, they have not stated a proper claim against the parish. The United States Fifth Circuit Court of Appeals has held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003). In the instant case, plaintiffs do not even allege that the purported violations here stemmed from an official policy or custom, much less identify such a policy or custom. Accordingly, the claims against St. John the Baptist Parish should likewise be dismissed.

## C. Assistant Attorney General Julie Cullen and District Attorney Thomas F. Daley

Plaintiffs have also sued Assistant Attorney General Julie Cullen and District Attorney Thomas F. Daley. For the following reasons, those claims also fail.

As to any claim against Cullen in her official capacity, that claim fails for two reasons. First, Cullen, as an assistant attorney general, is a state employee, and a state employee or official in her

official capacity is not a "person" amenable to suit for damages under § 1983.  <u>Will</u>, 491 U.S. at 71;

<u>see also Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69 n.24 (1997); <u>Boyd v. Lasher</u>,

Civ. Action No. 09-7645, 2010 WL 677663, at *2 (E.D. La. Feb. 24, 2010); <u>McCloud v. Craig</u>, Civ.

Action No. 09-3287, 2009 WL 2515609, at *5 (E.D. La. Aug. 17, 2009).

Second, a judgment against Cullen in her official capacity would be satisfied out of the state

treasury.  La.Rev.Stat.Ann. § 13:5108.1.  Because an official-capacity claim against her is therefore

in reality a claim against the state itself, any such claim is barred by the Eleventh Amendment.

<u>Voisin's Oyster House, Inc. v. Guidry</u>, 799 F.2d 183, 188 (5th Cir. 1986); <u>see also</u> <u>Wallace v. Texas</u>

<u>Tech University</u>, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official

capacity are considered to be suits against the individual office, and so are generally barred as suits

against the state itself."); <u>Doris v. Van Davis</u>, Civ. Action No. 08-4138, 2009 WL 382653, at *2

(E.D. La. Feb. 12, 2009).

Plaintiffs likewise have not stated a proper claim against Daley in his official capacity.  The

United States Fifth Circuit Court of Appeals has noted:

> For purposes of "official capacity" suits under § 1983, the district attorney's
> office resembles other local government entities.  Therefore, we advert to the
> Supreme Court's development of principles for determining whether a municipality
> or other local government entity should be held liable under 42 U.S.C. § 1983 for
> the constitutional tort of its employee.

<u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 470 (5th Cir. 1999).  Accordingly, as previously

explained, plaintiffs must allege that an identified official policy or custom served as a moving force

behind the constitutional violation at issue or that their injuries resulted from the execution of such

a policy or custom.  Because plaintiffs do not even allege that the purported violations here stemmed

from an official policy or custom, much less identify such a policy or custom, they have not stated a proper official-capacity claim against Daley.

As to any claim against either Cullen or Daley for damages in their individual capacity, such claims are barred by their absolute prosecutorial immunity. Prosecutorial immunity protects prosecutors against claims based on their "actions in initiating the prosecution and in carrying the case through the judicial process." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994). A prosecutor's absolute immunity also extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993) (quotation marks omitted). Further, "[a]bsolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987) (quotation marks omitted).

Prosecutorial immunity does not, of course, protect Cullen or Daley against claims for injunctive relief. See, e.g., Supreme Court of Virginia v. Consumers Union of the United States, Inc., 446 U.S. 719, 736-37 (1980); Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. 1981). Therefore, it is possible for a federal court to enjoin a prosecutor from pursuing a "bad faith" prosecution in state court. Fitzgerald v. Peek, 636 F.2d 943 (5th Cir. 1981); Shaw v. Garrison, 467 F.2d 113 (5th Cir. 1972). That said, it is nevertheless exceedingly rare for federal courts to meddle in state court proceedings by utilizing the bad faith exception and will do so in only the most egregious of cases. For example, it will not be utilized where the allegations as to motivation are conclusory, Schiavone Construction Co. v. New York City Transit Authority, 593 F. Supp. 1257, 1258 n.4 (S.D.N.Y. 1984), or where the claims of selective prosecution are weak, Schuler v. City of Chambersburg, Pa., 641

F. Supp. 657, 661 (M.D. Pa. 1986); Penthouse International, Ltd. v. Webb, 594 F. Supp. 1186, 1194

(N.D. Ga. 1984).  Further, it will not be utilized simply because the state's case is a close one,

Penthouse International, 594 F. Supp. at 1194, or because an individual has been subjected to

multiple prosecutions, Collins v. County of Kendall, Ill., 807 F.2d 95, 99 (7th Cir. 1986).  Rather,

in all but the most exceptional cases, an individual's remedy is instead to defend the state court

prosecution and then to appeal any adverse decision through orderly appellate channels, because

federal district courts are not meant to be a substitute for the state appellate process.  See, e.g.,

Morris v. Brown, 521 F. Supp. 444, 445 (M.D. La. 1981).  Here, plaintiffs do not present one of

those exceptional cases, and they have a full arsenal of adequate remedies at their disposal, including

the right to appeal any conviction in the state courts, to seek direct review of that conviction in

United States Supreme Court, to seek collateral post-conviction review in the state courts, and to

seek *habeas corpus* relief in the federal courts.

Accordingly, for all of these reasons, all claims against Cullen and Daley should be rejected.

### D. Judges Mary H. Becnel, J. Sterling Snowdy, and A.J. Kling

Plaintiffs have also named Judges Mary H. Becnel, J. Sterling Moody, and A.J. Kling as

defendants.  That, too, is improper.

To the extent that plaintiffs are asserting official-capacity claims against the judges, those

claims fail for two reasons.  First, the judges are state officials, and, as explained previously, a state

official in his or her official capacity simply is not a "person" amenable to suit for damages under

§ 1983.  Will, 491 U.S. at 71; see also Arizonans for Official English, 520 U.S. at 69 n.24; Boyd,

2010 WL 677663, at *2; McCloud, 2009 WL 2515609, at *5.  Second, a judgment against the judges

in their official capacity would likewise be satisfied out of the state treasury. La.Rev.Stat.Ann. § 13:5108.1. Because an official-capacity claim against them is therefore in reality a claim against the state itself, any such claim is also barred by the Eleventh Amendment. <u>Voisin's Oyster House, Inc.</u>, 799 F.2d at 188; <u>Doris</u>, 2009 WL 382653, at *2; <u>see also</u> <u>Wallace</u>, 80 F.3d at 1047 n.3.

To the extent that the judges are being sued in their individual capacity for monetary damages, they are protected by absolute judicial immunity. It has long been held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335, 351 (1871); <u>see also</u> <u>Brandley v. Keeshan</u>, 64 F.3d 196, 200 (5th Cir. 1995) (absolute immunity applies even where judge's "exercise of authority is flawed by grave procedural errors" or where the judge "took action maliciously or was in excess of his authority"); <u>Harper v. Merckle</u>, 638 F.2d 848, 856 n.9 (5th Cir. 1981) ("[W]e can envision no situation – where a judge acts after he is approached *qua* judge by parties to a case – that could possibly spawn a successful § 1983 suit."). The United States Supreme Court has explained: "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). Further, judicial immunity is clearly applicable in federal civil rights cases. <u>Stump v. Steward</u>, 435 U.S. 349, 356 (1978); <u>Pierson v. Ray</u>, 386 U.S. 547, 554-55 (1967).

The Supreme Court has recognized only two instances in which judicial immunity is inapplicable:

> [O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles, 502 U.S. at 11-12 (citations omitted). Neither of those exceptions applies in this case.

Regarding the first exception, the Supreme Court has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362. The acts at issue here, taken while presiding over plaintiffs' state criminal proceedings, obviously involve functions normally performed by a judge. Further, plaintiffs are clearly dealing with the judges in their judicial capacity.

Regarding the second exception, there is no question that the judges have jurisdiction over plaintiffs' criminal proceedings.

Accordingly, for the foregoing reasons, any individual-capacity claims against the judges for monetary damages are barred by their absolute judicial immunity.

Lastly, to the extent that plaintiffs are seeking injunctive relief against the judges, that relief is likewise unavailable. The Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983; Doris v. Van Davis, Civ.

Action No. 08-4138, 2009 WL 382653, at *3 (E.D. La. Feb. 12, 2009); <u>Wilkerson v. Lanier</u>, Civ.

Action No. 06-3044, 2006 WL 2135224, at *3 (E.D. La. July 27, 2006); <u>see also Guerin v. Higgins</u>,

8 Fed. App'x 31, 32 (2nd Cir. 2001); <u>Nollet v. Justices of the Trial Court of the Commonwealth of

Massachusetts</u>, 83 F. Supp. 2d 204, 210 (D. Mass.), <u>aff'd</u>, 248 F.3d 1127 (1st Cir. 2000).

Moreover, even prior to that amendment, the United States Supreme Court held that federal

courts generally should not intervene in the manner in which state judicial officers conduct criminal

proceedings.  The Supreme Court noted:

> The Court has recently reaffirmed the 'basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied relief.' <u>Younger v. Harris</u>, 401 U.S. 37, 43-44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).  Additionally, recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is both "great and immediate."  <u>Id</u>., at 46, 91 S.Ct., at 751.

<u>O'Shea v. Littleton</u>, 414 U.S. 488, 499 (1974).  In <u>Younger</u>, the United States Supreme Court had

expressly held:

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term.  Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

<u>Younger</u>, 401 U.S. at 46 (citation omitted).  A criminal defendant prejudiced by misconduct of a

presiding judge finds relief not by bringing a federal lawsuit pursuant to 42 U.S.C. § 1983, but rather

by availing himself of state procedures for a change of venue or recusal of a judge, seeking review

of any resulting conviction through direct appeal or post-conviction collateral review, and filing a petition for federal *habeas corpus* relief in appropriate circumstances. See O'Shea, 414 U.S. at 502.

Accordingly, for all of these reasons, plaintiffs claims against Judges Becnel, Moody, and Kling should be rejected.

### E.  St. John the Baptist Parish Clerk of Court's Office

Plaintiffs have also sued the St. John the Baptist Parish Clerk of Court's Office.  The claims against that office should be rejected for two reasons.

First, the Clerk's Office is an arm of the Louisiana Fortieth Judicial District Court, and a state court simply is not a "person" or a juridical entity capable of being sued under § 1983.  Moity v. Louisiana State Bar Association, 414 F. Supp. 180, 182 (E.D. La.) ("[S]tate courts are not considered 'persons' within the meaning of § 1983."), aff'd, 537 F.2d 1141 (5th Cir. 1976); Thompson v. St. Bernard Parish Court, Civ. Action No. 09-4465, 2010 WL 110797, at *3 (E.D. La. Jan. 11, 2010); Stewart v. Criminal District Court of Louisiana, Civ. Action No. 08-3731, 2008 WL 4758610, at *2 (E.D. La. Oct. 30, 2008); Knight v. Guste, Civ. Action No. 07-1124, 2007 WL 1248039, at *3 (E.D. La. Apr. 27, 2007).

Second, in any event, plaintiffs neither make any factual allegations against the Clerk's Office or its employees nor identify any official policy or custom of the Clerk's Office which allegedly caused the deprivation of plaintiffs' constitutional rights.  As a result, even if the Clerk's Office were a suable entity, no cognizable claim has been stated against that office.

### F.  St. John the Baptist Parish Sheriff's Office

Plaintiffs also named the St. John the Baptist Parish Sheriff's Office as a defendant. However, that claim must be dismissed because "a sheriff's office is not a legal entity capable of

being sued...." <u>Cozzo v. Tangipahoa Parish Council-President Government</u>, 279 F.3d 273, 283 (5th Cir. 2002); <u>see also Campbell v. St. Tammany Parish Sheriff's Office</u>, Civ. Action No. 09-3143, 2009 WL 1107251, at *1 (E.D. La. Apr. 23, 2009); <u>Wetzel v. St. Tammany Parish Jail</u>, 610 F. Supp. 2d 545, 548 (E.D. La.2009); <u>Smith v. St. Tammany Parish Sheriff's Office</u>, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988).

## G.  St. John the Baptist Parish Correctional Center

Plaintiffs also sued the St. John the Baptist Parish Correctional Center.  That claim must likewise be dismissed because a jail is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983.  <u>James v. Jefferson Parish Correctional Center</u>, Civ. Action No. 07-4231, 2008 WL 1927399, at *2 (E.D. La. Apr. 30, 2008); <u>see also Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); <u>Martinez v. Larpenter</u>, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); <u>Cullen v. DuPage County</u>, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Correctional Facility Administration</u>, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F. Supp. 271, 274 (E.D. Pa. 1976).

## H.  Warden Phillip J. Herbert

Plaintiffs have also named Warden Phillip J. Herbert as a defendant; however, they have stated no claim against Herbert.  Specifically, they have not alleged that Herbert's actions, whatever they may have been, stemmed from an identified official policy or custom, as required to state an

official-capacity claim.  They likewise have made no factual allegations concerning any actions

Herbert personally took against them which violated their constitutional rights, as is required to

support an individual-capacity claim.[4]  Because they have failed to state a claim against Herbert in

either his official or individual capacity, the claims against him should be dismissed.

---

[4]    Out of an abundance of caution, the Court notes that if the claims against the warden are
based on the continued detention of plaintiffs based on the court orders, the warden would be
protected by absolute immunity for that action.  The United States Fifth Circuit Court of Appeals
has clearly and expressly held that "an official acting within the scope of his authority is absolutely
immune from a suit for damages to the extent that the cause of action arises from his compliance
with a facially valid judicial order issued by a court acting within its jurisdiction."  Mays v.
Sudderth, 97 F.3d 107, 113 (5th Cir. 1996).  The Fifth Circuit explained:

> The significant reasons underlying the grant of absolute immunity to those
> officials who carry out the facially valid orders of a court with proper jurisdiction are
> not difficult to discern.  Enforcing or executing a court order is intrinsically
> associated with a judicial proceeding.  As the Eighth Circuit has observed in
> addressing the immunity afforded prison wardens for continuing to incarcerate a
> prisoner pursuant to a valid court order, absolute immunity is essential to insure the
> fearless and unhesitating execution of court orders necessary if the court's authority
> and ability to function are to remain uncompromised.  Indeed, not only may the
> threat of litigation impede an official's compliance with judicial orders, but fear of
> bringing down litigation on the official might color a court's judgment in some cases.
> Moreover, because judges are absolutely immune from suit for judicial actions taken
> pursuant to their jurisdiction, to deny similar protection to government officials
> executing their orders would render the officials lightning rods for harassing
> litigation aimed at judicial orders.  We note, moreover, the unfairness of imposing
> liability in this context – an official charged with executing a facially valid court
> order has no choice but to do so.  Government officials should not be required to
> make the Hobson's choice between disobeying the court order or being haled into
> court to answer for damages.  To hold otherwise would require sheriffs and other
> court officers enforcing facially valid orders to act as pseudo-appellate courts
> scrutinizing the orders of judges.  Such a result is obviously untenable.

Id. at 112-13 (citations, footnote, quotation marks, and brackets omitted).

## I.  St. John the Baptist Office of Community Service

Plaintiffs have also sued the St. John the Baptist Parish Office of Community Service.  It is unclear from the complaint whether that entity is a division of the state or of the parish.  However, in either event, the claim should be dismissed.  If the Office of Community Service is a division of the state government, then any claim against it fails because, as previously explained, state agencies are immune from suit under the Eleventh Amendment and are not "persons" suable under § 1983. If the Office is a division of the local government, then, as also previously explained, a claim against a local governmental entity is cognizable only if the plaintiffs allege that their constitutional rights were violated as a result of an identified official policy or custom; again, no such allegation is made here.  Therefore, regardless of whether the office is a division of the state or local government, no cognizable, nonfrivolous claim has been stated against the office.

## J.  Coroner Christy Montegut

Plaintiffs have also named Coroner Christy Montegut as a defendant; however, they likewise have stated no claim against Montegut.  Because they have not alleged that Montegut's actions, whatever they were, stemmed from an identified official policy or custom, they have stated no claim against her in her official capacity.  Further, because they have made no factual allegations concerning any actions Montegut personally took against them which violated their constitutional rights, they have stated no claim against her in her individual capacity.  In that plaintiffs have failed to state a claim against Montegut in either her official or individual capacity, the claims against her should be dismissed.

### K.  St. John the Baptist Parish Public Defender's Office

Plaintiffs also sued the St. John the Baptist Parish Public Defender's Office.  However, that claim must be dismissed because a Louisiana public defender's office "is not a legal entity amenable to suit for redress of plaintiff[s'] claims."  Cannon v. Sixth District Public Defender Office, Civ. Action No. 09-2164, 2010 WL 5855912, at *4-5 (W.D. La. Oct. 26, 2010), adopted, 2011 WL 918736 (W.D. La. Feb. 15, 2011); see also North v. Jones, Civ. Action No. 11-0865, 2012 WL 3044279, at *2 n.1 (E.D. La. July 12, 2012), adopted, 2012 WL 3044273 (W.D. La. July 25, 2012); McCann v. Louisiana, No. 11-CV-1663, 2012 WL 1309251, at *2 (W.D. La. Mar. 12, 2012), adopted, 2012 WL 1309281 (W.D. La. Apr. 16, 2012); Fondol v. Orleans Parish District Attorney Office, Civ. Action No. 08-4158, 2008 WL 4891238, at *2 (E.D. La. Nov. 4, 2008).

### L.  Unidentified Defense Counsel

Plaintiffs indicated on their complaint that they also intended to sue "all defense counsels." However, no such individuals were identified and named as defendants in the complaint, and plaintiffs cannot proceed against unidentified persons.  Francis v. Terrebonne Parish Sheriff's Office, Civ. Action No. 08-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009); August v. Gusman, Civ. Action No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); Staritz v. Valdez, No. 3-06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); Banks v. United States, Civ. Action No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007).  Further, it would be futile to allow plaintiffs an opportunity to amend the complaint to identify the defense attorneys at issue, because the attorneys would be improper defendants in any event.  As noted, to be a proper defendant in a § 1983 action, the defendant must have acted under color of state law.

18

Therefore, any claims plaintiffs may wish to assert against their criminal defense counsel plainly

fail, because it is clear that neither public defenders nor private attorneys are state actors liable under

§ 1983.  See Polk County v. Dodson, 454 U.S. 312, 325 (1981) ("[A] public defender does not act

under color of state law when performing a lawyer's traditional functions as counsel to a defendant

in a criminal proceeding."); Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (ineffective

assistance of counsel claim was not cognizable in § 1983 lawsuit because retained counsel was not

a state actor); Mills v. Criminal District Court # 3, 837 F.2d 677, 679 (5th Cir. 1988) ("[S]ection

1983 claims require that the conduct complained of be done under color of law, and private

attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject

to suit under section 1983."); Ellison v. De La Rosa, 685 F.2d 959, 960 (5th Cir. 1982) (ineffective

assistance of counsel claims brought against appointed counsel in a § 1983 suit must fail "for want

of any action under color of state law").[5]

### M.  Detectives Christie Murden Chavin and Kenneth Mitchell

Lastly, plaintiffs have sued Detectives Christie Murden Chavin and Kenneth Mitchell.

Although plaintiffs' complaint is hardly a model of clarity, it appears that plaintiffs are claiming that

Chavin and Mitchell falsely arrested them and actively concealed exculpatory evidence.  If those

---

[5]      The Court recognizes that claims against an attorney for engaging in a conspiracy with a state actor are cognizable in a § 1983 action.  Mills, 837 F.2d at 679; Brown v. Blaize, Civ. Action No. 08-3730, 2008 WL 3876573, at *2 n.2 (E.D. La. Aug. 20, 2008).  Although plaintiffs do allege the existence of a widespread conspiracy against them, their allegations on that point are wholly conclusory.  Conclusory allegations of conspiracy fail to state a § 1983 cause of action.  Small v. Dallas County, Texas, 170 Fed. App'x 943, 944 (5th Cir. 2006); Russell v. Millsap, 781 F.2d 381, 383 (5th Cir. 1985); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); Brown, 2008 WL 3876573, at *2 n.2.

are in fact the claims against Chavin and Mitchell, they should stayed until the state criminal charges are resolved.

If plaintiffs had already been convicted, this Court would clearly be barred from considering the claims by Heck v. Humphrey, 512 U.S. 477 (1994).[6] However, plaintiffs are currently awaiting trial, and the United States Supreme Court has held that Heck does not bar "an action which would impugn *an anticipated future conviction*...." Wallace v. Kato, 549 U.S. 384, 393 (2007) (emphasis in original).

---

[6]  In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (emphasis in original) (footnote omitted). Heck bars a false arrest claim brought by a convicted prisoner until such time as he obtains a favorable disposition on *all* of the underlying criminal charges for which he was arrested. See Wallace v. Kato, 549 U.S. 384, 394 (2007); Queen v. Purser, 109 Fed. App'x 659, 660 (5th Cir. 2004); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995); Jordan v. Strain, Civ. Action No. 09-3565, 2009 WL 2900013, at *2 n.4 (E.D. La. Aug. 28, 2009); Landor v. Hogue, Civ. Action No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008). Claims that a conviction has been tainted by the suppression, destruction, or alternation of material evidence likewise clearly fall within the Heck prohibition. See, e.g., Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1999).

Nevertheless, the Supreme Court made clear that does not mean that federal courts should forge ahead with cases in which similar considerations exist. Rather, the Supreme Court held:

> If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the civil suit would impugn that conviction, <u>Heck</u> will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

<u>Id</u>. at 393-94 (citations omitted). Therefore, under that reasoning, plaintiffs' claims against Chavin and Mitchell should be stayed until such time as the state criminal proceedings are concluded.

## <u>RECOMMENDATION</u>

It is therefore **RECOMMENDED** that plaintiffs' federal *habeas corpus* claims be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiffs' federal civil rights claims against the State of Louisiana, St. John the Baptist Parish, Assistant Attorney General Julie Cullen, District Attorney Thomas F. Daley, Judge Mary H. Becnel, Judge J. Sterling Snowdy, Judge A.J. Kling, the St. John the Baptist Parish Clerk of Court's Office, the St. John the Baptist Parish Sheriff's Office, the St. John the Baptist Parish Correctional Center, Warden Phillip J. Herbert, the St. John the Baptist Parish Office of Community Service, the St. John the Baptist Parish Public Defender's Office, Coroner Christy Montegut, and unidentified defense counsel be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights claims against Detectives Christie Murden Chavin and Kenneth Mitchell be **STAYED** and that the Clerk of Court be directed to mark this action **CLOSED** for statistical purposes.

It is **FURTHER RECOMMENDED** that the Court retain jurisdiction and that the case be restored to the trial docket upon plaintiffs' motion once their criminal proceedings are concluded, so that the claims against Chavin and Mitchell may proceed to final disposition.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[7]

New Orleans, Louisiana, this twenty-sixth day of November, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.